```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------X

JOSEPH F. RASULO, JR.,              08 Civ. 9056 (FPS)

        Plaintiff,                  MEMORANDUM OPINION AND
                                    ORDER GRANTING DEFENDANTS'
v.                                  MOTION FOR SUMMARY JUDGMENT

EDMUND HARTNETT, individually,
CHARLES GARDNER, individually,
EDWARD GEISS, individually,
PHILIP DOE, individually,
JOHN ROE, individually and the
CITY OF YONKERS, New York,

        Defendants.

---------------------------------X
```

## I. Procedural History

Joseph F. Rasulo, Jr., a former Yonkers Police Department detective in the narcotics unit, filed the above-styled civil action pursuant to 42 U.S.C. § 1983, alleging violations of his due process rights. The complaint sets forth a claim that the defendants, in order to offset adverse publicity from allegations of excessive force by members of the Yonkers Police Department, falsely accused the plaintiff of robbing a drug dealer. The plaintiff claims that the defendants' actions forced him to involuntarily retire from the Yonkers Police Department, and that his constructive discharge violated his Fourteenth Amendment right to due process. The plaintiff later amended his complaint to add a second claim that the defendants' conduct violated his right to liberty as guaranteed by the Fourteenth Amendment.

Prior to the filing of the amended complaint, the defendants filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The docket sheet indicates, in a text order only, that on February 4, 2009, proceedings were held before United States District Judge Stephen C. Robinson and that the defendants' motion to dismiss was withdrawn.

On April 30, 2010, the defendants filed a motion for summary judgment. In this motion, the defendants argue that the plaintiff did not suffer a constructive discharge and his Fourteenth Amendment rights were not violated. Also on April 30, 2010, the plaintiff filed a memorandum of law in opposition to the defendants' motion for summary judgment. The third pleading filed on April 30, 2010 was a reply in support of the defendants' motion for summary judgment. On May 27, 2010, the plaintiff requested permission from the Court to submit a sur-reply on the issue of the alleged improper submission of the defendants' Rule 56.1 statement. Judge Robinson granted the plaintiff permission to submit a sur-reply not to exceed ten pages, but the plaintiff never filed a sur-reply. Even so, the defendants' motion for summary judgment has been fully briefed and is now pending before this Court. For the reasons stated below, the defendants' motion for summary judgment is granted.

## II. Facts[1]

Over the course of several years, Edmund Hartnett, Commissioner of Police for the City of Yonkers ("Commissioner Hartnett") and Philip Amicone, Mayor of Yonkers, were the subject of negative media coverage due to police brutality allegedly engaged in by certain rogue members of the Yonkers Police Department. The media reported extensively on a number of incidents of excessive force, including three assaults by Yonkers police officers that occurred in August and September 2008. In part due to this negative media coverage, the United States Department of Justice commenced an investigation of the Yonkers Police Department with regard to excessive force and discriminatory policing.

In order to offset this negative press, Commissioner Hartnett, Charles Gardner, First Deputy Chief of the Yonkers Police Department ("Chief Gardner"), and Edward Geiss, Chief of Investigative Services in the Yonkers Police Department ("Chief Geiss"), acting with other city officials, commenced an investigation of the plaintiff for a crime that he claims he did not commit -- the armed robbery of a drug dealer.

On the evening of September 16, 2008, the plaintiff used a Yonkers Police Department unmarked vehicle to conduct a stop of a

---

[1] For the purpose of deciding this motion for summary judgment, the Court considers, for the most part, the facts as set forth by the plaintiff in his amended complaint.

van.[2]  The plaintiff searched the van, and in the process cut up and destroyed the passenger seat of the vehicle.  The plaintiff claims that he found nothing in the vehicle during the search.  After completing the search, the plaintiff had his informant drive the undercover police vehicle to Fullerton Avenue, while he drove the van, which he left on Fullerton Avenue with the keys in the ignition.  The occupants of the van later complained to the Yonkers Police Department, and the Police Department notified Internal Affairs of the plaintiff's potential involvement in the incident.

The press, through unidentified sources, eventually learned of the investigation and made inquiries.  The plaintiff, however, asserts that the defendants identified him to news reporters and told them that he was under investigation by the Police Department's Internal Affairs Bureau and the Westchester County District Attorney's Public Integrity Bureau for committing an off-duty armed robbery of a street-level drug dealer, stealing in excess of $100,000.00.  The defendants allegedly further informed the press that the plaintiff had been placed on modified duty and had been required to surrender his duty weapons and police identification card.

During a press conference held on October 10, 2008, Commissioner Hartnett, Chief Garner, and Chief Geiss allegedly informed the media that the plaintiff was under investigation for

---

[2] The plaintiff admits that he did not file the proper paperwork for the overtime he worked on September 16, 2008. Pl.'s Rule 56.1 Counterstatement ¶ 2.

stealing from a drug dealer in connection with off-duty armed robbery, that the robbery involved only one member of the Yonkers Police Department, that the plaintiff's service weapon was taken, and that the plaintiff had been placed on modified duty.  These facts were then reported by News Channel 12 on October 10, 2008 and published by The Journal News on October 11, 2008.  Additionally, the plaintiff claims that a blogger disclosed his name at the request of the defendants.  The defendants, however, claim that no one in the Yonkers Police Department ever revealed the plaintiff's name to members of the media.

On December 18, 2008, the plaintiff was questioned by Internal Affairs at a hearing with regard to the incident that occurred on September 16, 2008.  At the hearing, the plaintiff refused to answer any questions, despite being fully informed that his failure to answer could result in disciplinary actions, including termination.  As a consequence of the October 10, 2008 press conference, the plaintiff decided to "buy back" military time in order to retire early from the Police Department.  On December 8, 2008, the plaintiff filed for retirement from his position, and he retired on January 9, 2009.

### III.  Applicable Law

Under Rule 56(c) of the Federal Rules of Civil Procedure,

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>      (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations,

> stipulations . . . admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "The non-movant may defeat summary judgment only by producing specific facts showing that there is a genuine issue of material fact for trial." Samuels v. Mockry, 77 F.3d 34, 36 (2d Cir. 1996) (citing Celotex, 477 U.S. at 322).

However, as the United States Supreme Court noted in Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250.

In Celotex, the Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element

essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Summary judgment is not appropriate until after the non-moving party has had adequate time for discovery. Salahuddin v. Coughlin, 993 F.2d 306, 308 (2d Cir. 1993). In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## IV.   Discussion

In support of their motion for summary judgment, the defendants argue: (1) the plaintiff did not suffer a constructive discharge; (2) the plaintiff's right to due process under the Fourteenth Amendment was not violated; and (3) the plaintiff's right to liberty as guaranteed by the Fourteenth Amendment was not violated. In response, the plaintiff counters that the defendants' motion for summary judgment should be denied because: (1) the defendants' Rule 56.1 statement fails to cite to any evidence as required by Federal Rule of Civil Procedure 56(e); (2) the plaintiff was constructively discharged; (3) the plaintiff's Fourteenth Amendment right to due process was violated; and (4) the plaintiff's Fourteenth Amendment right to liberty was violated. In their reply in support of their motion for summary judgment, the defendants reiterate their previous arguments and contend that their motion should not be denied solely for failure to cite to any

evidence in their Rule 56.1 statement.  This Court will address each of these arguments in turn.

A.   Constructive Discharge

Constructive discharge is well-defined in Second Circuit Court of Appeals cases.

> Constructive discharge of an employee occurs when an employer, rather than directly discharging an individual, intentionally creates an intolerable work atmosphere that forces an employee to quit involuntarily.  Working conditions are intolerable if they are so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelling to resign.

Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 73 (2d Cir. 2000) (citing Chertokova v. Connecticut Gen. Life Ins., 92 F.3d 81, 89 (2d Cir. 1996)); see also Ferraro v. Kellwood Co., 440 F.3d 96, 101 (2d Cir. 2006) ("A plaintiff's further claim for constructive discharge requires the plaintiff to prove that her employer deliberately and discriminatorily created work conditions 'so intolerable that a reasonable person in the employee's position would have felt compelled to resign.'") (quoting Pennsylvania State Police v. Suders, 542 U.S. 129, 141 (2004)).  However, working conditions that the employee finds difficult or unpleasant do not necessarily suffice to sustain an inference that a reasonable person would have been compelled to resign.  See Martin v. Citibank, N.A., 762 F.2d 212, 221 (2d Cir. 1985) (holding that the evidence was insufficient as a matter of law to establish constructive discharge); see also Pena v. Brattleboro Retreat, 702 F.2d 322, 325-26 (2d Cir. 1983) (holding that an employee's

dissatisfaction with a change in her job responsibilities does not support a claim for constructive discharge). Whether working conditions are sufficiently intolerable to constitute a constructive discharge "is assessed objectively by reference to a reasonable person in the employee's position." Petrosino v. Bell Atlantic, 385 F.3d 210, 230 (2d Cir. 2004).

In this case, the plaintiff claims that the defendants wrongfully accused him of stealing from a drug dealer while on duty and as a result, the Yonkers Police Department considered him to be untrustworthy and his work environment became hostile and unpleasant. Rasulo Dep. 98:13-24. According to the plaintiff, he was labeled a "rat" and a "dirty cop," thus becoming a pariah within the Police Department. Pl.'s Rule 56.1 Counterstatement ¶ 89. However, the plaintiff fails to describe a single instance when any one of the defendants personally accused him of committing any crime, and he offers no direct evidence that the three defendants ever mentioned his name to any media source. Rasulo Dep. 99:24-100:24, Sept. 16, 2009; Geiss Dep. 19:3-8, Sept. 23, 2009. Significantly, the defendants have testified under oath that they did not reveal the plaintiff's name to the media. Hartnett Aff. ¶ 7; Geiss Aff. ¶ 8; Gardner Aff. ¶ 6. In fact, during the October 10, 2008 press conference, Commissioner Harnett never stated the name of the individual under investigation for the alleged robbery -- instead he specifically stated that he would not provide the name of the police officer. Hartnett Dep. 9:12-16;

29:9-21, Sept, 21, 2009. Although News Channel 12 identifies the plaintiff as a suspect in the robbery investigation, his name was provided by "sources," and Commissioner Hartnett is not identified as the "source." Defs.' Mot. for Summ. J. Ex. 10. The plaintiff himself admits that Commissioner Hartnett never mentioned his name to News Channel 12 during the October 10, 2008 press conference. Rasulo Dep. 99:21-22; 100:20-23. An article published in The Journal News on September 27, 2008 also states that Commissioner Hartnett declined to identify the police officer under investigation. Pl.'s Resp. to Mot. for Summ. J. Ex. 22.

While the plaintiff claims to have personal knowledge that Chief Geiss leaked his name to the media, he refuses to provide that information. Rasulo Dep. 104:11-21. The plaintiff's contention that an unnamed member of the Yonkers Police Department informed him that Commissioner Hartnett confirmed the plaintiff's name to the news media amounts to nothing more than hearsay and rumor. Similarly, the plaintiff provides no evidence to support his theory that the defendants conspired to investigate him in order to offset other negative media attention received by the Yonkers Police Department.

After the completion of the investigation by Internal Affairs, the plaintiff was never actually charged with any crimes.[3] Rasulo

---

[3] Although the plaintiff was never charged with any crimes, this Court finds that the investigation by Internal Affairs was justified, given the fact that the plaintiff's actions on the evening of September 16, 2008 deviated significantly from police procedures.

10

Dep. 92:3-5. While his placement on modified duty and the investigation by Internal Affairs may have made his work unpleasant and his interactions with fellow officers strained, these allegations alone do not support a constructive discharge claim. Further, the facts asserted by the plaintiff regarding his retirement fall short of constructive discharge. When asked why he put in his retirement papers, the plaintiff responded "Because I wanted to retire and I was forced to." Rasulo Dep. 98:9-12. "If he resigned of his own free will even though prompted to do so by events set in motion by his employer, he relinquished his interest voluntarily and thus cannot establish that the [City] 'deprived' him of it within the meaning of the due process clause." Stone v. Univ. of Maryland Med. Sys. Corp., 855 F.2d 167, 173 (4th Cir. 1988). The fact that the plaintiff chose to retire early because of his possibly tarnished reputation and his uncomfortable work environment does not amount to constructive discharge.

B.  Fourteenth Amendment Right to Due Process

In his amended complaint, the plaintiff argues that his right to due process was violated as a result of his constructive discharge. As explained above, this Court finds that the plaintiff did not suffer from constructive discharge, and thus, his due process rights as guaranteed by the Fourteenth Amendment were not violated. But even assuming that the plaintiff was constructively discharged, the plaintiff has failed to state a claim for violation of the due process clause.

In order to state a claim for a violation of due process under § 1983, the plaintiff "must allege the deprivation under color of state law of a constitutionally protected right without due process." Carfora v. City of New York, 705 F. Supp. 1007, 1008 (S.D. N.Y. 1989) (citing Parratt v. Taylor, 451 U.S. 527, 535 (1981)). Due process requires that the state not deprive an individual of a significant liberty or property interest without affording notice and an opportunity to be heard prior to the deprivation. New Windsor Volunteer Ambulance Corps, Inc. v. Meyer, 442 F.3d 101, 115 (2d Cir. 2006). The Supreme Court of the United States has adopted a two prong test to determine whether an individual's right to due process has been violated. First, the Court must determine if the plaintiff has a protected interest at stake. Second, the Court must apply a balancing test and determine what type of process is due. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532 (1985); Angrisani v. City of New York, 639 F. Supp. 1326, 1332 (E.D. N.Y. 1986).

In this case, the plaintiff claims that he involuntarily filed for retirement from his position of employment having never been afforded a pre-deprivation due process hearing, and that due to the defendants' destruction of his reputation, he will never be able to work in law enforcement again. Am. Compl. ¶ 20; Pl.'s Rule 56.1 Counterstatement ¶ 92. An interest in continued employment may constitute a protected property right for purposes of due process in certain circumstances. See e.g., Abramson v. Pataki, 278 F.3d

12

93, 99 (2d Cir. 2002) ("[I]n this circuit, a person may possess a protected interest in public employment if contractual or statutory provisions guarantee continued employment absent 'sufficient cause' for discharge or he can prove a de facto system of tenure."); Donato v. Plainview-Old Bethpage Cent. School Dist., 96 F.3d 623, 629 (2d Cir. 1996) ("State law . . . guides us in deciding whether plaintiff possessed only an unprotected unilateral expectation of employment, or instead had a constitutionally-protected 'legitimate claim of entitlement.'"). However, the plaintiff has not alleged that any such circumstances exist here. Therefore, the plaintiff's forced retirement claim fails to state a claim under § 1983. See Jaeger v. Bd. of Educ. of the Hyde Park Cent. Sch. Dist., 125 F.3d 844, at *2 (2d Cir. 1997) (affirming dismissal of due process claim based on coerced resignation where "[the plaintiff] points to no law which establishes a protected interest in his job.").

The plaintiff also claims that his right to liberty was violated. While termination from state employment does not automatically amount to a deprivation of a liberty interest, "the Supreme Court has recognized such an interest where an employee's 'good name, reputation, honor, or integrity is at stake because of what the government is doing to him.'" Mascho v. Gee, 24 F.3d 1037 (8th Cir. 1994) (quoting Bd. of Regents v. Roth, 408 U.S. 564, 573 (1972)). To establish a claim for deprivation of liberty under the Fourteenth Amendment and § 1983, the plaintiff must show more than simple stigma or defamation by the state official. Paul v. Davis,

13

424 U.S. 693, 711-12 (1976); Patterson v. City of Utica, 370 F.3d 322, 329-30 (2d Cir. 2004) ("A person's interest in his or her good reputation alone, apart from a more tangible interest, is not a liberty or property interest sufficient to invoke the procedural protections of the Due Process Clause or create a cause of action under § 1983.").

To establish a claim of defamation under New York law, a plaintiff must show:

> (1) that the statement averred was defamatory; (2) that the statement was published by the defendant; (3) that the statement was communicated to a party who was not the plaintiff; and (4) the resultant injury to the plaintiff.

Chandok v. Klessig, 648 F. Supp. 2d 449, 456 (N.D. N.Y. 2009). In this case, the plaintiff has been unable to establish any defamation by the defendants. The plaintiff has not proven that the defendants published his identity in connection with the robbery, or caused a third party to publish his identity. Instead, the plaintiff has only speculated that the defendants were responsible for his name appearing in connection with the Internal Affairs investigation because they were the individuals who held the press conference on October 10, 2008. Rasulo Dep. 108:1-11. But mere speculation does not suffice to support the plaintiff's claim, especially when the coverage of the October 10, 2008 press conference confirms that Commissioner Hartnett refused to reveal the name of the subject of the investigation. The empty accusations by the plaintiff, without evidence to support them,

cannot establish defamation in support of a claim for deprivation of liberty.

Even if the plaintiff had established a liberty interest, due process was not violated because the plaintiff was properly afforded notice and an opportunity to be heard. Due process requires that a person be granted an opportunity to be heard at a meaningful time and in a meaningful manner before the deprivation of a protected interest. Patterson v. Coughlin, 761 F.2d 886, 890 (2d Cir. 1985). During the plaintiff's initial Internal Affairs investigation, he was informed that failure to answer questions would result in discipline, which could include termination. Rasulo Dep. 106:1-6. Nevertheless, the plaintiff refused to answer any questions at the Internal Affairs hearing. Following that hearing, the plaintiff was awarded numerous hearings and rights to appeal from December 2008 through February 2009. Defs.' Mot. for Summ. J. Ex. L. However, the plaintiff failed to utilize these opportunities, and cannot now properly argue that he was denied due process.

C.  Rule 56.1 Statement

Local Civil Rule 56.1 provides, in pertinent part:

> Each statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Federal Rule of Civil Procedure 56(e).

Local Civ. R. 56.1. District courts in the Southern District of New York have interpreted this rule to mean that "where there are

no citations or where the cited materials do not support the factual assertions in the Statements, the Court is free to disregard the assertion contained therein." Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 73-74 (2d Cir. 2001) (internal quotations omitted). According to the plaintiff, none of the factual assertions contained in the defendants' Rule 56.1 statement in support of their motion for summary judgment are followed by a citation to any evidence which would be admissible as required by Rule 56(e) of the Federal Rules of Civil Procedure. Accordingly, the plaintiff argues that this Court should disregard the defendants' Rule 56.1 statement in its entirety and deny the motion for summary judgment.

In their reply in support of the motion for summary judgment, the defendants argue that their motion for summary judgment should not be dismissed on procedural grounds. The defendants acknowledge that they did not cite to evidence in their Rule 56.1 statement, but they also set forth that they did cite to evidence in their January 20, 2010 affirmation. Therefore, the defendants argue that the plaintiff was not prejudiced because he knew what evidence the defendants relied on for their recitation of the facts. Further, the defendants submitted a supplemented Rule 56.1 statement in conjunction with their reply affirmation that contains citations to the record.

This Court has "broad discretion to determine whether to overlook a party's failure to comply with the local court rules."

Holtz, 258 F.3d at 73.  "Local Rule 56.1 is designed to place the responsibility on the parties to clarify the elements of the substantive law which remain at issue because they turn on contested facts."  Monaghan v. New York City Dept. of Corr., 214 F.3d 275, 292 (2d Cir. 2000).  Because the defendants cited to evidence in their January 20, 2010 affirmation and because they have filed an amended Rule 56.1 statement that includes citations to the record, this Court finds that any defect in the original Rule 56.1 statement has been cured, and this Court sees no reason to deny summary judgment on the grounds that the defendants failed to abide by Rule 56.1.  Defs.' Reply Ex. 2.

## V. Conclusion

For the reasons stated above, the defendants' motion for summary judgment is GRANTED.  It is ORDERED that this case be DISMISSED and STRICKEN from the active docket of this Court.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.  Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on this matter.

DATED:    November 15, 2011                **SO ORDERED:**

>                /s/ Frederick P. Stamp, Jr.
>                FREDERICK P. STAMP, JR.
>                UNITED STATES DISTRICT JUDGE
>                Sitting by Designation

17